### THE DESPATCH.

#### (District Court, E. D. New York. December 24, 1902.)

1. COLLISION—VESSEL BACKING FROM PIER—NEGLIGENCE.

> When a lighter was backing to get out from her pier, her engine failed to start forward in obedience to the lever, and she backed into another vessel lying at an adjoining pier. Repairs were being made on the piers, and there was more or less driftwood in the water, and it was claimed that her propeller was fouled by a log. The steward stood at the stern, but was not keeping any lookout for obstructions. *Held,* that she was in fault for failing to exercise greater care in backing, in view of the known danger of fouling, under the circumstances.

In Admiralty. Suit for collision.

Gifford, Stearns & Hobbs (Jesse Stearns, of counsel), for libelant.

Robinson, Biddle & Ward (Charles M. Hough, of counsel), for claimant.

THOMAS, District Judge. The steam lighter Joanna was lying at the end of the South Central Pier, in the Atlantic Basin, with her bow out. The lighter Despatch, 101 feet over all, was lying at the North Central Pier, with her bow in and her stern about 50 feet from the end of the pier. The Despatch backed under one bell, with the intention of carrying her bow past the end of the pier, and then starboarding to go out of the basin. When the stern of the Despatch was about 150 feet from the Joanna, the engineer gave one bell to stop and one bell to go ahead. The engineer changed his reverse lever forward, and let on the steam, but the vessel did not go ahead, and continued her sternway; whereupon the captain from the pilot house looked out, and asked the engineer what was the matter, to which the engineer replied, according to the captain's statement, that she had picked up a log. The Despatch continued to go back until her stern struck the Joanna's starboard side at about a right angle. At the instant of contact, according to the libelant's evidence, the propeller became free, and the Despatch went forward, and after an interval came back and lay alongside the Joanna, while the captain of the Despatch went aboard the Joanna, and

there, or on the deck, had a conversation with the captain of the Joanna, in which he told him that he had collided with the Joanna, and had done her some harm, and that he would report it. The evidence shows that they were repairing one of the piers, and that there was considerable driftwood in the basin.

Burke, the engineer of the Despatch, stated that at the moment he got the bell to stop and go forward his engine stopped, and that although he reversed and gave steam she would not go ahead; that he called to the captain that he could not go ahead, and told the fireman to use a bar for the purpose of prying over one of the cog-wheels which turned the crank; that the fireman pried on such cog-wheel in such a way as to turn the wheel from left to right. He stated that when he was backing the wheel was turning from right to left. Matthews, the fireman, testified that he was in the fireroom; that he heard only the bells to back; that finally the engineer called out to him, "Pry her out; there is something the matter with her." He stated on cross-examination that the captain said, "Pry her off," and nothing more. Upon being questioned by the court he testified that the engineer said, "Pry her off; there is something the matter;" that he himself knew that there was something the matter; that just as she struck the propeller became free. The engineer testified that the propeller was fouled, but finally stated that he could not say whether it was fouled, or whether the engine was on its center, and that the bar would be used in either case. The fireman stated that he had many times pried off vessels that were on the center, but that he had seldom been called to do it in the case of the Despatch. Patterson, the deck hand, testified that he heard a bell to stop and go ahead, and that when she did not go ahead he went to the stern, and found the steward there with a fender; that she struck just as he got back, and that just as she struck the engine did go ahead; that he saw the captain put his head out of the window, and heard him ask what was the matter, and that the engineer said that she would not work, that she was on the center; and he added, on cross-examination, that the engineer said that there was something in the wheel; that he did not see anything in the wheel. Shanley, the steward, said that he let go the lines and stayed aft; that he looked to see that there was nothing coming in or out of the basin; that there was a good deal of driftwood; that he did not hear bells to stop or go ahead; that he loitered around the stern; that he saw the Despatch approaching the Joanna, and that he picked up a rope fender when the vessels were from 15 to 20 feet apart; that the Despatch was going very slowly; that he did not notice driftwood in the immediate neighborhood of the propeller; that as soon as the Despatch struck he could see her quickwater; that he did not see anything come from the propeller of the Despatch; that he did not notice the Despatch stop, and did not give any warning.

The fact seems to be that the Despatch backed in such a way as to carry her stern far eastward of the line of the North Central Pier, and that when the captain gave the signal to go ahead she did not go ahead, although the engineer properly disposed his engine therefor, but that at the moment of contact she did begin to go ahead.

If the claimant's contention be accepted that the propeller was fouled, she became disabled by reason of the driftwood, of which there was full knowledge. Therefore the Despatch should have used greater care in backing, in which motion the propeller is more apt to be fouled. The steward who was astern should have been on the sharp lookout, but his own evidence shows that he was loitering rather than looking out, and it is concluded that proper care was not used in backing the boat and looking out lest driftwood should foul the propeller.

The libelant should have a decree.